## KING v. BOOTH.

### Opinion delivered March 21, 1910.

1. TRESPASS—WHO MAY SUE.—The holder of the legal title to land, although not in possession, may sue to recover damages for permanent injury to the freehold, as for cutting timber. (Page 308.)

2. TAXATION—TAX DEED—DESCRIPTION OF LAND.—A tax deed is insufficient which describes the land sold as four-sixths of a certain quarter section, without describing the tract sold with sufficient definiteness to locate it with reference to the remainder of the tract. (Page 309.)

3. LIMITATION OF ACTIONS—PAYMENT OF TAXES.—The seven years statute with reference to the payment of taxes on wild and unimproved land under color of title does not begin to run, in case the color of title is a tax deed, until expiration of the period of redemption from tion from such tax sale. (Page 310.)

4. DEEDS—AFTER ACQUIRED TITLE—QUITCLAIM.—As a quitclaim deed does not purport to convey any title except what the grantor has at the time of its execution, title subsequently acquired by the grantor will not inure to the benefit of the grantee. *Wells* v. *Chase,* 76 Ark. 417, followed. (Page 311.)

Appeal from White Circuit Court; *Hance N. Hutton,* Judge; reversed.

### STATEMENT BY THE COURT.

On August 14, 1907, the plaintiff, J. G. Booth, brought this suit in the White Circuit Court against the defendant, E. M. King, and, for cause of action, alleged as follows: That he was the owner and entitled to the possession of the following described lands situate in White County, towit: the north ½ of the northwest ¼, and the southeast ¼ of the northwest ¼, of sec. 24, twp. 6 north, range 8 west, containing in all 120 acres, more or less. That said lands are wild and unoccupied, and that on or about the 1st day of May, 1907, the defendant entered upon said lands and unlawfully cut and removed therefrom a large amount of timber standing and growing thereon.

The defendant answered, denying all the material allegations of the complaint. It is admitted that the lands are wild and unimproved, and that appellant went upon the lands, and cut and removed therefrom certain trees growing thereon. The remaining facts are sufficiently stated in the opinion. There was a verdict and a judgment for the plaintiff, and the defendant has duly prosecuted an appeal to this court.

*Rachels & Robinson,* for appellant.

1. To maintain trespass the plaintiff must have possession; and where he was not in actual possession at the time of the trespass, he must plead and prove that he had the legal title, and that the land is not in the actual possession of any one. 85 Ark. 211; 65 Ark. 600; 80 Ark. 31; 76 Ark. 426; 44 Ark. 74; 14 Ark. 433; 8 Ark. 470; 1 Ark. 470; *Id.* 448; 26 Ark. 496; 69 Ark. 427; Shipman's Com. Law Pleading, 63. There can be no constructive possession of land, even by the holder of the legal title, where another is in actual adverse possession thereof. 40 Mich. 559; 61 Mich. 368; 28 N. W. 127; 74 Ark. 386.

2. Title to land acquired by one subsequent to his having made a quitclaim deed to such land does not pass to the grantee in the quitclaim deed. 76 Ark. 417; 72 Ark. 82; 34 Ark. 596; 1 Devlin on Deeds, § 27.

3. A clerk's tax deed which describes the land as "4-6 of N. W. Sec. 24, Tp. 6 N., R. 8 W.," is void on its face, and gives

no color of title. 85 Ark. 7; 59 Ark. 462; 77 Ark. 576; 83 Ark. 537; 50 Ark. 484; 83 Ark. 199; 69 Ark. 357. A clerk's tax deed describing the land as "all of the undivided two-sixth (2-6) of the northwest quarter," etc., is void.

4. Appellee has acquired no title by the payment of taxes. The two tax deeds, being void, give no color of title; but, even if they gave color of title, seven successive yearly payments of taxes cannot be shown, even from the date of the first tax deed. Booth and Greer being adverse holders, Greer's payment of taxes for 1903 and 1904 cannot be tacked to the payment by Booth for 1902. 67 Ark. 94.

*S. Brundidge, Jr.,* and *H. Neelly,* for appellee.

1. The conveyances under which appellee claims gave at least color of title. All that he or those under whom he claims needed to constitute color of title was that they should have a deed to the land in apt words purporting to convey the same to him from the grantor. 102 U. S. 540; 40 Ark. 237; 47 Ark. 487; 70 Ark. 487; 71 Ark. 487; *Id.* 386; 96 Ga. 860; 7 Wash. 617; 32 N. E. 309.

2. If appellee did not acquire title by the payment of taxes, which is not conceded, he would still have the right to maintain this suit upon his tax deeds. Appellant, having failed to show that he and those under whom he claims title were the owners of the land at the time of the sale, is in no position to attack the tax title of appellee. Kirby's Dig., § 7105. If it were true, as claimed, that appellant held under a conflicting tax title, the last sale, under which appellee holds, would cut off the title acquired by appellant. 73 Ark. 560.

3. Appellant had notice from appellee a short time after going on the land that he, appellee, was claiming it, and, having in effect offered to purchase, recognized appellee's title. 163 Ill. 283; 63 Cal. 112; Tyler on Ejectment, 921.

HART, J., (after stating the facts). The appellant first contends that appellee could not maintain the action because he was not in the possession of the land, claiming to be the owner thereof; but the court has held adversely to his contention. In discussing the question in the recent case of *Crowder* v. *Fordyce Lumber Co.,* 93 Ark. 392, the court held that such action is not one for damages for an injury to the pos-

session of the land, but was one to recover damages for permanent injury to the freehold, and that the holder of the legal title, although not in possession, could maintain the action. To the same effect is the decision in the case of *Newman* v. *Mountain Park Land Co.,* 85 Ark. 211, where our former decisions on the question are reviewed.

The most serious question in the case is, did appellee, at the time he brought the suit, have the legal title to the lands? Appellee first claims title to said lands by virtue of two clerk's tax deeds. The first deed was executed on the 23d day of August, 1901. It recites that "the following described property, towit: 4-6 of N. W. ¼ Sec. 24, Tp. 6 N., R. 8 W., situate in the county of White, and State of Arkansas, was subject to taxation for the year A. D. 1898." That in 1899 they were sold to appellee under that description for the nonpayment of the taxes for the year 1898, and, the period of redemption having expired, the county clerk executed a deed to appellee to said lands, describing them as above set forth. The deed of the county clerk to appellee was void on its face on account of a defective description of the lands. This court so held with reference to a tax deed with a similar description in the case of *Beardsley* v. *Hill,* 85 Ark. 7, in which our former decisions on the point are collected.

The second deed was executed by the county clerk to appellee on the 8th day of February, 1906. This deed recites that "the following described property: und. 2-6 of northwest ¼ of section twenty-four (24) in township six (6) north, range eight (8) west, containing fifty-three and 33-100 acres, situate in the county of White and State of Arkansas, was subject to taxation for the year A. D. 1899." Under the same description the lands were sold to appellee for nonpayment of taxes, and a deed made to him by the county clerk.

We are also of the opinion that this deed is void on account of a defective description of the lands. The purchaser at a tax sale must stand strictly on his legal title. In the case of *Bonner* v. *Bd. Directors St. Francis Levee Dist.,* 77 Ark. 521, the court said: "The statutes of this State provide that real property, belonging to the same owner, shall be assessed by section, or the largest subdivision of which the same is capable; and that 'in

all cases, when practicable, and the land is owned by one person, or one or more persons jointly, description of lands, both on the tax books and delinquent lists, shall be in tracts not less than one hundred and sixty acres,' and that lands shall be described on the delinquent lists as they are described on the tax books; and impliedly that they shall be sold at tax sale in the same manner. Kirby's Digest, § § 6976, 7024, 7083 and 7085."

The rule there announced distinguishes the present case from the case of *Payne* v. *Danley,* 18 Ark. 441. In the latter case the land was described in the tax books and in the delinquent list under its proper legal subdivision, the value and amount of taxes were set out, and opposite appeared the words: "Moses U. Payne and Bank of Kentucky each owns one undivided half." Payne paid his part of the taxes, and, the bank having failed to do so, its undivided share of the land was sold. The court held that where a tract of land is assessed against tenants in common, and one of them pays the tax on his undivided share, the interest of the other may be sold to satisfy the residue of the assessment. In the case at bar an undivided 2-6 part of the land, containing 53 acres, was assessed and sold separately from the other portions of the tract. The part so assessed and sold was attempted to be segregated, and the number of acres contained in it was given, but there is no earmark furnished by which to distinguish it from the other parts of the tract. From the description given its location with reference to the other parts of the tract is not shown; its value as compared with the other parts can not be ascertained, and we think the description falls within the rule heretofore laid down by this court that where a part of a tract of land is assessed and sold for the nonpayment of taxes, and the description is not sufficiently definite to locate it with reference to the remaining portions of the tract, the sale will be void. See *Bonner* v. *Bd Directors of St. Francis Levee Dist., supra; Beardsley v. Hill, supra,* and cases cited; *Beardsley* v. *Hill,* 71 Ark. 211; *Buckner* v. *Sugg,* 79 Ark. 442.

It is also claimed by appellee that he acquired title to said lands by payment of taxes for seven years under the act of March 18, 1899 (Kirby's Digest, § 5057), but the statute did not begin to run against the owner until the expiration of the

period of redemption. *Earle Improvement Co.* v. *Chatfield,* 81 Ark. 296. The period of redemption under the first sale did not expire until June, 1901, and the suit was commenced in August, 1907. Hence it is manifest that appellee could not have acquired title by the payment of taxes for seven successive years. The period, of redemption under the second sale was a still later date, and appellee could not have acquired title under the act of March 18, 1899, to the lands embraced in the second deed.

In February, 1906, appellee received a quitclaim deed to said land from L. E. Moore, but the record shows that at that time Moore had no title or interest in said lands. Appellee seeks to avail himself of certain conveyances subsequently made to Moore to the lands in question; but this he cannot do, under the rule announced in the case of *Wells* v. *Chase,* 76 Ark. 417. In that case the court held (quoting from syllabus) : "As a quitclaim deed does not purport to convey any title except what the grantor has at the time of its execution, such a deed is not within the statute which provides that 'if any person shall convey any real estate by deed purporting to convey the same in fee simple absolute, or any less estate, and shall not at the time of such conveyance have the legal estate in such lands, but shall afterwards acquire the same, the legal or equitable estate afterwards acquired shall immediately pass to the grantee.' "

For the reasons given in the opinion, the judgment will be reversed, and the cause remanded for a new trial.