HORSTMANN *v.* LAFARGUE.

Opinion delivered November 17, 1919.

1. PLEADING AND PRACTICE—ALLEGATION OF INSOLVENCY—FAILURE TO DENY.—Where a complaint alleged that the defendant was insolvent, and the answer did not deny the allegation, it is unnecessary to prove it.

2. FRAUD—MORTGAGE TO DEFRAUD CREDITORS.—The evidence *held* to show that the mortgagor of certain property, had mortgaged it for the purpose of defrauding creditors.

3. FRAUDULENT CONVEYANCES—RIGHT OF CREDITOR—EQUITY JURISDICTION.—The benefits of Kirby's Digest, section 6297, are conferred upon any one who, before the statute, would have had the right, after his cause of action had been reduced to judgment, to sue to set aside the fraudulent conveyance. (The statute provides that in suits to set aside fraudulent conveyances and to obtain equitable garnishments, it is not necessary for the plaintiff to

obtain judgment at law in order to prove insolvency. Only one suit is necessary.)

4. FRAUDULENT CONVEYANCES—INSOLVENCY—EQUITY JURISDICTION— ONE SUIT.—In an action to set aside a fraudulent conveyance, it is necessary to show that the remedy at law is inadequate, by showing that the debtor has no other sufficient means from which the claim of the creditor may be satisfied, or showing other facts sufficient to call for the interference of a court of equity.

5. EQUITY JURISDICTION—FOR ALL PURPOSES.—When equity has acquired jurisdiction of a matter in suit for one purpose, all matters in issue will be adjudged and complete relief afforded.

6. FRAUDULENT CONVEYANCES—COMPLETE RELIEF.—In order that complete relief be granted under Kirby's Digest, section 6297, it is necessary that the chancery court have jurisdiction of the subject-matter before granting the relief provided by the statute.

7. EQUITY JURISDICTION — FRAUDULENT CONVEYANCES — CLAIMANTS FOR DAMAGES FROM TORTS.—Claimants for damages arising from torts are within the protection of statutes against fraudulent conveyances, and are regarded as creditors within the meaning of such statutes.

8. SAME—SAME—SAME.—One holding a claim against another for a tort is a creditor, and has a right to sue to set aside a fraudulent conveyance, and as an incident to that right, under Kirby's Digest, section 6297, equity has jurisdiction to adjudicate his claim and to reduce it to judgment.

Appeal from Arkansas Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*Geo. W. Hays* and *W. F. Terral,* for appellants.

1. There was no evidence to justify the finding that the mortgages were given or kept on record to cheat or defraud plaintiff or any one else. In order to set aside a conveyance for being fraudulent as to future creditors, it must be shown that the debtor reasonably had in mind or contemplation the contracting of future debts at the time the conveyance is made. Plaintiff failed to show that defendant did not have enough property left to pay all his debts after the mortgages had been executed, hence no evidence of his insolvency. It is shown that defendants retained· enough property to pay all existing creditors at the time the conveyances were made. 96 Ark. 538; 8 *Id.* 470; 23 *Id.* 494; 29 *Id.* 407; 56 *Id.* 73, 253. Before

a voluntary conveyance can be set aside at the instance of subsequent creditors, the evidence must show that such conveyance was made to defraud such creditors. 38 Ark. 427; 50 *Id.* 42. Insolvency must be shown. 56 Ark. 256; 63 *Id.* 416.

2. Under the act of March 31, 1887, it is not a prerequisite to a suit in equity by a creditor to annul a fraudulent conveyance that the creditor should reduce his claim to judgment at law and have execution issue with a return of *nulla bona*. It is still necessary to prove insolvency of the debtor. 66 Ark. 486; 63 *Id.* 412. A voluntary conveyance by an insolvent debtor is fraudulent as to subsequent as well as existing creditors if the debtor reasonably had in contemplation the contracting of such future debts at the time the conveyance was made. 56 Ark. 69; 118 *Id.* 232.

3. The chancery court did not have jurisdiction to hear and determine the personal injury case involved. The allegations were not sufficient to give the court jurisdiction to determine the question of damages for personal injuries. 37 Ark. 292-3; 1 *Id.* 42; Pom. Eq. (4 Ed.), par. 237, p. 374; 140 U. S. 111; Pom. Eq. (4 Ed.), p. 373; 619 par. 327; *Ib.,* p. 156, and p. 222, par. 175; *Ib.,* p. 630, 372; 185 N. Y. 408; 78 N. E. 272; 28 R. I. 496; 14 L. R. A. (N. S.) 900; 68 Atl. 421; 45 N. Y. Supp. 982, 19 App. Div. 201; 140 U. S. 111; 92 Fed. 709-10; art. 7, sec. 5, Const. 1874; Kirby's Digest, § 1285. Consent of parties, express or implied, can not give a court jurisdiction. 33 Ark. 31. See also 88 Ark. 6; 203 Ill. 98; 124 Ill. 517. Jurisdiction can not be waived by consent. 100 Ark 373; 118 *Id.* 310; 79 *Id.* 293; 120 *Id.* 530.

*John W. Moncrief,* for appellee.

1. Insolvency is alleged and is not denied, therefore insolvency is established and can not now be questioned. Defendants admitted the amount of damages. 66 Ark. 419.

2. All parties agreed that the case be tried in the chancery court, and no jury was asked for, and there can

be no question of the right of the chancery court having
the right to assess unliquidated damages by the agree-
ment of parties. 114 Ark. 425-6; 79 *Id.* 499; 74 *Id.* 104;
57 *Id.* 589; 1 *Id.* 235; 106 *Id.* 123, 125; 105 *Id.* 669-671;
102 *Id.* 326; 111 Ark. 329; 112 *Id.* 572-581; 75 *Id.* 400; 98
*Id.* 329. The amount of damages was admitted; defend-
ants only deny that they caused or contributed to the
damages, a question of fact which a chancery court is
competent to pass on. The damages were also proved
by the evidence and the fraud was also amply proved.
32 Ark. 337-346. The trial in equity was agreed to and
there was no question of unliquidated damages, but if so
the court had jurisdiction to assess them as damages *in
tort.* Kirby's Digest, § § 3658, 7801, 3313. The statute
is remedial and can be liberally construed. 56 Ark. 476;
*Ib.* 451-456. The injured party in tort is a creditor. 811
Am. St. 62-67-8. The mortgage was void as to subsequent
creditors. 64 Ark. 415; 14 A. & E. Enc. L. (2 Ed.) 268.
It was a "continuing fraud" upon creditors, both prior
and subsequent. 59 Ark. 614; 63 Ark. 244.

3. Having assumed jurisdiction for one purpose,
courts of equity will retain it for all and grant all the
relief legal and equitable to which the parties are enti-
tled. 113 Ark. 100, 111. They certainly have jurisdic-
tion of fraudulent transfers to defeat creditors. *Supra,*
and 186 S. W. 302; 92 Ark. 15; 99 *Id.* 438-446. Having
jurisdiction for one purpose, the court acquired it for all
and should grant all necessary relief. 84 Ark. 140; 26
Am. St. 523. The provision of our Constitution as to
jury trial relates to trials in civil or common cases at
law and not to trial issues in equity. 26 Am. St. 523; 63
Vt. 221; 36 N. J. Eq. 118. Having obtained jurisdiction,
courts of equity should grant all the relief the parties
show themselves entitled to. 26 N. J. Eq. 118; 39 S. E.
225; 6 Am. St. 169-170-1; 7 Cranch. 69; 27 Am. St. 724;
33 N. E. 700. See also 50 N. E. 692; 27 S. E. 288, 291-2.
Our statute of 1887 eliminates the necessity of first suing
at law and chancery had jurisdiction to prevent multi-

plicity of suits. 16 Ann. Cases 690; 45 So. Rep. 861; 22 Ann. Cases 801; 119 N. E. Rep. 376. Courts of chancery have jurisdiction to assess damages in connection with other relief asked. 13 Am. Rep. 366; 87 N. E. 613; 94 *Id.* 933; 95 *Id.* 345; 65 *Id.* 1081; 30 L. R. A. (N. S.) 176-179; 32 *Id.* 117-123; 136 Am. St. 651, 656; 32 Ind. App. 38; 99 Am. St. 427; 20 Cyc. 392-3; 63 Ark. 412; 118 *Id.* 229.

As to jurisdiction see also 6 Pom. Eq. Jur., § § 873-4; 108 N. E. 1082-3; 32 *Id.* 300-302; 25 Am. Rep. 276; 1 Gilm. 397.

As to equity jurisdiction to determine legal issues, see 143 U. S. 79; 119 *Id.* 322; 134 *Id.* 338; 96 *Id.* 193; 9 How. 390; 160 U. S. 1; 4 Wheat. 108; 172 U. S. 1; 130 *Id.* 505; 156 *Id.* 680; 138 *Id.* 49; 12 Peters 178; 63 Am. St. 382.

This court will not disturb the findings of a chancellor unless clearly against the preponderance of the evidence. Here it clearly sustains the decree. 101 Ark. 368-375; 91 *Id.* 69. The findings are not excessive and the court has done exact justice.

SMITH, J. This suit was filed by appellee, E. B. LaFargue, on March 12, 1917, in the Arkansas Chancery Court against Henry Horstmann, Sr., Henry Horstmann, Jr., and Annie Horstmann, the wife of Henry Horstmann, Jr., to recover damages for personal injuries and to uncover certain real estate alleged to have been mortgaged by Henry Horstmann, Jr., in fraud of his creditors. Horstmann, Sr., who lived with his son as a member of his family, died before the rendition of the final decree, but the cause was properly revived against his administrator and judgment was rendered against all the defendants for the amount sued for and the conveyances attacked by appellee were canceled as having been executed in fraud of creditors.

This appeal raises no question that the damages recovered were excessive or that the testimony did not support the finding of liability, but a reversal is asked upon two grounds, first, that the evidence is not sufficient to

sustain the finding that the mortgagor was insolvent at the time the mortgages were executed, and, second, that the chancery court did not have jurisdiction to hear and determine the personal injury case involved here.

(1) Upon the question of insolvency, it may be said that the answer contained no denial of that allegation, and it was therefore unnecessary to prove it. *Slayden-Kirksey Woolen Mills* v. *Anderson,* 66 Ark. 419. However, the chancellor found that allegation was supported by the testimony, and we can not say that the finding to that effect was clearly against the preponderance of the evidence.

The personal injury for which compensation was asked grew out of the shooting of appellee in May, 1916, by one Peters as the result of a conspiracy to which the Horstmanns were shown to have been parties. The Horstmann who was the mortgagor in the conveyances attacked had been cast in a suit in replevin for the costs of the suit and was much aggrieved at that judgment and announced his purpose never to pay these costs. Appellee was at the time the sheriff of the county, and after failing in his efforts to induce Horstmann to pay these costs, undertook to make a levy under a fee-bill on a horse belonging to Horstmann and was shot while attempting to do so.

The two mortgage conveyances here attacked were each dated December 28, 1914. One recited a consideration of $3,960 and the other $10,800. The mortgagee was Fritz Horstmann, a brother of the mortgagor and a nonresident of this State. The attorney appointed to represent the nonresident mortgagee applied to the mortgagor for the postoffice address of his brother and this information was refused, the statement being made at the time that counsel had been employed by the mortgagor to defend the suit.

It appears to be reasonably certain that there was no consideration for the execution of these mortgages, yet the consideration recited was much greater than the value of the land. Horstmann, the

mortgagor, encumbered his personal property with a chattel mortgage on September 28, 1914, and with a second chattel mortgage on the same property on January 1, 1915. A mortgage on a portion of the lands in question securing $1,200 was executed on June 14, 1912, to the New England Securities Company, and the validity of that mortgage was not questioned. The debt there secured was not paid, and there was a decree of foreclosure, and at the sale thereunder the lands sold for a sum in excess of the mortgage debt and that excess has been impounded by the decree here appealed from. Six days before these mortgages were executed a suit was brought against Horstmann by the Weber Implement Company for a debt of $1,600 due upon a sale of machinery, and a decree for that sum was finally rendered and the machinery ordered sold, and at its sale brought $625, which was credited on the decree of sale. The balance has not yet been collected. On November 17, 1914, C. W. Waters brought suit against Horstmann for a settlement of their partnership farming operations, and witnesses speak of other suits, the particulars of which are not given. Horstmann admitted that he had no property out of which creditors could secure satisfaction except the lands conveyed by the mortgages.

(2) We think this testimony warranted the finding made by the court below that Horstmann was insolvent at the time of the execution of the mortgages and that they were executed for the purpose of defrauding his creditors.

We are thus brought to the decision of the question of the jurisdiction of the court to render a decree for damages. Authority for this suit is said to be found in section 6297 of Kirby's Digest, which reads as follows:

"Section 6297. In suits to set aside fraudulent conveyances and to obtain equitable garnishments, it shall not be necessary for the plaintiff to obtain judgment at law in order to prove insolvency, but in such cases insolvency may be proved by any competent testimony, so that

only one suit shall be necessary in order to obtain the proper relief."

(3) From what has been said it appears that this is a suit to set aside fraudulent conveyances and to obtain an equitable garnishment of the sum remaining in the hands of the commissioner upon a sale under the decree of foreclosure of the mortgage in favor of the New England Securities Company, and it will be noted that the statute says that in such suits "it shall not be necessary for *the plaintiff* to obtain judgment at law in order to prove insolvency, * * *" etc., thus indicating that the character of the suit in which the relief is asked is immateral, and the words, "the plaintiff," must be interpreted as if they read *any plaintiff*. The benefits of the statute are conferred upon any one who, before the statute, would have had the right, after his cause of action had been reduced to judgment, to sue to set aside the fraudulent conveyances.

In the case of *Davis* v. *Arkansas Fire Insurance Company*, 63 Ark. 412, Mr. Justice RIDDICK, in construing the statute, said:

"Formerly, the rule was that the creditor must first recover judgment at law, and have execution issued and returned *nulla bona*, before he could come into equity to ask that a transfer of property made by his debtor should be set aside as fraudulent. The courts of equity required the creditor to show in this way that the ordinary legal remedies were inadequate. The statute of 1887 dispenses with the necessity of obtaining a judgment before commencing a suit to set aside a fraudulent conveyance, and provides that in such cases 'insolvency may be proved by any other method.' Sections 3134 and 5919, Sandels & Hill's Digest. The former decisions requiring judgment, execution and return of execution unsatisfied were based on the rule that equity will not lend its aid when the remedy at law is full and adequate. It would therefore seem that, following the same reason, it is still necessary to show that the remedy at law was inadequate, by showing that the debtor has not other sufficient means

from which the claims of the creditor may be satisfied, or showing other facts sufficient to call for the interference of a court of equity.''

Again interpreting this statute in the case of *Euclid Avenue National Bank* v. *Judkins,* 66 Ark. 486, the court said:

''The design of this act was, not to do away with the necessity of showing insolvency to entitle one to equitable relief, but only to broaden the methods of proving it. The statute makes unnecessary the expense and delay incident to obtaining judgment and the issuing and returning of process thereon when insolvency—the ultimate fact to be established—may be proved by other and more direct methods. *Riggin* v. *Hilliard,* 56 Ark. 481. The old and familiar rule that, before one can seek relief from a court of equity, he must show that he does not have a complete and adequate remedy at law, still prevails in this State.''

This statute had previously been given effect and relief awarded under it in the cases of *Riggin* v. *Hilliard,* 56 Ark. 451, and *Rudy* v. *Austin,* 56 Ark. 69.

Later cases in which the plaintiff has been given complete relief in a single suit under this statute are *Fluke* v. *Sharum,* 118 Ark. 229, 237, and *Davis* v. *Beauchamp,* 99 Ark. 404.

The more recent case of *Martin* v. *Manning, Emerson & Morris,* 124 Ark. 74, was one in which the chancery court fixed an attorney's fee in a suit *quantum meruit* and in the same suit uncovered certain lands which had been fraudulently conveyed.

(4-5) As pointed out by Judge RIDDICK in the case of *Davis* v. *Arkansas Fire Ins. Co., supra,* it is still necessary to show that the remedy at law is inadequate, by showing that the debtor has no other sufficient means from which the claims of the creditor may be satisfied, or showing other facts sufficient to call for the interference of a court of equity. So that, in effect, the statute is a declaration of the doctrine that, when the chancery court has acquired jurisdiction of a matter in suit for one purpose, all matters in issue will be adjudged and complete relief

afforded. We have numerous cases in which chancery courts, when giving the equitable relief to which the parties have shown themselves entitled, have, at the same time, adjudged matters otherwise cognizable only in the courts of law but which were disposed of as incidents in the cases. For instance, in the case of *Nichol* v. *Stewart,* 36 Ark. 612, Mr. Justice EAKIN, speaking for the court, said:

"It is true that, in an equity case involving matters appropriate to chancery jurisdiction, damages from malfeasances, misfeasances or nonfeasances regarding the subject-matter, may be estimated incidentally, for the purpose of closing all litigation in one suit. They are not of themselves, however, proper subject of chancery jurisdiction when they constitute the whole, or principal ground, of the relief sought. They should in all cases be affirmatively shown with some tolerable degree of certainty, or they should not be taken into the adjustment of matters arising from contract, or affecting property. Jurisdiction to award compensation for damages has been assumed by courts of equity with great caution, and manifest reluctance."

Appellants state their position as follows: "The damage did not come out of, nor was it an incident of any matter which was alleged as an equitable claim."

The answer to that contention appears to be that the statute makes the amount due "an incident of a matter which is alleged as an equitable claim."

(6) Chancery courts have always had jurisdiction to set aside conveyances made in fraud of creditors and this statute was enacted, as was said in the cases set out above construing it, to prevent circuity of action by directing the court to ascertain the sum due upon the plaintiff's demand—whatever the nature of the demand may be—and to render judgment for that sum as an incident to the awarding of complete relief and closing out the litigation.

Of course it is essential, as said by Judge RIDDICK in the opinion quoted from above, that chancery courts

have jurisdiction of the subject-matter before granting this incidental relief, and that jurisdiction exists in the instant case only because it appears from the testimony that a fraudulent conveyance was made which in equity should be set aside.

The case of *Carpenter* v. *Osborne*, 7 N. E. 823 (a decision of the Court of Appeals of New York), was a suit to cancel fraudulent conveyances. Part of the demands in suit were liquidated and in judgment, while some of the demands had not been reduced to judgment. It does not appear that there existed in that State (New York) a statute like our section 6297 of Kirby's Digest set out above. The plaintiff there had recovered judgment in the court below for certain installments of income due her on articles of separation which were not in judgment when the action was commenced, as well as certain installments which had been reduced to judgment; but the court there said:

"We are, however, of the opinion that the court, having acquired jurisdiction to decree such conveyances fraudulent and void as to judgments previously recovered, was authorized to grant such further relief, within the scope and meaning of the issues made, as the parties might be equitably entitled to in connection with the transaction under investigation."

And, as its authority for that action, the court said:

"The rule relating to the subject is comprehensively stated by the author of the most recent work on Equity Jurisprudence, as follows:

" 'If the controversy contains any equitable features, or requires any purely equitable relief which would belong to the exclusive jurisdiction, or involves any matter pertaining to the concurrent jurisdiction, by means of which a court of equity would acquire, as it were, a partial cognizance of it, the court may go on to a complete adjudication, and may thus establish purely legal rights, and grant legal remedies, which would otherwise be beyond the scope of its authority.' Pomeroy, Eq. Jur., § 181; *Rathbone* v. *Warren,* 10 Johns. 596; *Hawley*

v. *Cramer,* 4 Cow. 717; *Crane* v. *Bunnell,* 10 Paige 333; *Bradley* v. *Bosley,* 1 Barb. Ch. 152.

"This principle has been applied in many cases in awarding judgment for pecuniary damages, even when the party had an adequate remedy at law, if the damages were connected with a transaction over which the courts had jurisdiction for any purpose, although for the purpose of collecting damages merely they would not have had jurisdiction. *Bradley* v. *Bosley, supra; Clarke* v. *White,* 12 Pet. 188; *Franklin Ins. Co.* v. *McCrea,* 4 Greene (Iowa), 229; *Brooks* v. *Stolley,* 3 McLean 523.''

(7-8) It is not questioned by appellant that appellee became a creditor upon receiving his injury, and if such denial were made it is swept away by the decision of this court in the case of *Papan* v. *Mahay,* 106 Ark. 230, in which we held that claimants for damages arising from torts are within the protection of statutes against fraudulent conveyances and are regarded as creditors within the meaning of such statutes.

So we conclude that appellee was a creditor who had the right to sue to set aside the fraudulent conveyances, and, as an incident to this right, section 6297 of Kirby's Digest, quoted above, gave the court jurisdiction to adjudicate appellee's claim and to reduce it to judgment, and it follows, therefore, that the decree of the court below must be affirmed, and it is so ordered.