BROAD *v.* BEATTY.

Opinion delivered November 19, 1904.

1. LANDLORD AND TENANT—VOID LEASE—PRESUMPTION.—The acceptance of a void lease raises a mere presumption of the recognition of the title of the lessor, which may be rebutted by testimony, *dehors* the instrument of lease, showing a contrary intention.   (Page 110.)

2. STATUTE OF LIMITATIONS—MUNICIPAL CORPORATION.—Sandels & Hill's Digest, § 5313, providing that "no statute of limitation or lapse of time that any obstruction or encroachment may have existed, or been continued, shall be permitted as a bar or defense against any proceeding or action to remove or abate the same, or to punish for its continuance, after an order has been made by the city council or the police court for its removal or abatement," does not prevent a plea of limitations in an action by an individual to require the removal of an obstruction from the public grounds of a city after an adverse holding for more than the statutory period, when no order of removal has been made by the city council or police court.   (Page 111.)

Appeal from Carroll Chancery Court, Western District.

JOHN N. TILLMAN, Judge.

Reversed.

*Chas. D. James* and *Jos. W. & M. House,* for appellant.

The findings of a chancellor upon disputed facts will be sustained only when supported by a preponderance of evidence. 41 Ark. 292; 42 Ark. 246; 42 Ark. 521; 43 Ark. 308; 44 Ark. 216; 50 Ark. 358; 55 Ark. 112; 34 Ark. 212. Appellee must show, before he can enjoin an encroachment upon public grounds, that he is an abutter on such public grounds. 50 Ark. 466; 156 Mo. 344; 153 Mo. 560; 65 Barb. 460; 31 N. Y. 289; 14 Q. B. 849; 35 Pa. St. 75. As to definition of "abutter," see: 1 Cyc. 220; Bouv. L. Dict; 1 Am. & Eng. Enc. Law, 49. *Cf.* also 12 Abb. N. C. 124; 127 Mass. 408; 49 Barb. 65; 52 N. Y. 395; 46 Ia. 256; 52 N. W. 523; 1 Cyc. 765; 52 N. Y.

395, 397. The city and the reservation were originally laid out by surface measurement; and the evidence sufficiently shows the existence of the fractional lot between the circle and lot 3. Rev. St. U. S. § § 2387-2394; Copp's Pub. Land. Laws, 1012; 19 Am. & Eng. Enc. Law, 363. The city had the right to grant the lease to appellant. Sand. & H. Dig. § 5313. That the latter named act is constitutional, see: 49 Ark. 199; 107 Mo. 198; 127 Mo. 109. Appellee bought the hotel property with actual knowledge of the lines claimed by appellant, and is thereby estopped. 65 Ark. 10. Even if appellant, in moving his house, violated a fire ordinance of the city, appellee could not, in his own right and independent of the city authorities, enjoin same. 4 N. Y. Supp. 414, 417; 93 N. Y. 12. Equity will not interfere for the further reason that the fire ordinance itself prescribes the remedy. 10 Am. & Eng. Enc. Law, 784; 8 Gill & J. 340; 8 L. R. A. 808; 31 Wis. 450; High, Inj. § 74; 2 Wood, Nuis. 1125; 80 Me. 307. Equity will not lend its aid to enforce ordinances unless the violation complained of is also a nuisance. Beach, Inj. § 1046; 7 Paige, 261; High, Inj. § 748. To entitle a private citizen to enjoin a public nuisance, he must specially plead and prove by a preponderance of the evidence some special injury. 65 Ark. 410, 413; 50 Ark. 466; 41 Ark. 526; 40 Ark. 83; 14 Conn. 565; 52 Am. St. 860; 57 *Id.* 688; 64 *Id.* 216; 17 Am. Rep. 516; Wood, Nuis. § 820, p. 1202; Ell. Roads & Streets, § § 496, 497, 537; High, Inj. § § 792, 762, 763. The injury sought to be enjoined must be real and not merely apprehended. 62 Am. St. 532; High, Inj. § 488; Story, Eq. Jur. § 924; Pom. Eq. Jur. § 1349; 2 Wood. Nuis. 1122, 1123; 1 Cinn. (Ohio) 368; 7 Bush, 403. The mere fact that this is a house on a reservation does not make it a nuisance *per se.* 16 Am. & Eng. Enc. Law, 937. When the existence of a nuisance is simply contingent or probable, injunction will not lie. 41 Ark. 526, 531; High, Inj. § § 742, 744; Beach, Inj. § 1069; 10 ·Am. & Eng. Enc. Law, 830; 6 Paige, 554; 8 L. R. A. 809; note; 51 Ga. 522. Special damage must be proved. 79 Wis. 316; 50 Ark. 466, 474; 65 Ark. 410; 40 Ark. 83; 2 Wood, Nuis. 853, 833; 17 Conn. 371; 6 Johns. Ch. 439; 1 Gr. Cas. (Pa.) 416; 3 Rand. 63; 4 Wis. 454; 49 S. W. 483; 24 Am. St. 715.

*J. V. Walker,* for appellee.

Dedicated property can not be diverted to other uses; and any improper use of dedicated property may be enjoined by any interested property holder. 5 Am. & Eng. Enc. Law, 417, 418; 6 L. R. A. 259; 40 L. R. A. 402; 45 Ga. 442; 87 Ill. 587; 22 Ia. 351; 30 Mich. 24; 38 Mo. 315; 21 So. 1029, 1031; 6 Pet. 431; 22 Ia. 351; 42 Cal. 553; 5 Am. & Eng. Enc. Law, title "Dedication." See further upon the right to injunction: 35 U. S. 25; 31 U. S. 498; 12 B. Mon. 538; 4 Ore. 339; 4 Ohio, 515; 7 Ohio, 217; 18 Ohio St. 221; 10 Heisk. 127; 4 Gr. Oh. 654; 5 *Id.* 402. Placing a house on the reservation was a nuisance *per se.* 35 Ark. 497; High, Inj. § 818; 50 Ark. 473. Appellee has shown a special and continuing injury, and is entitled to an injunction. 41 Am. St. 311; 46 Am. St. 368; 119 N. Y. 226; 13 Cal. 378; 134 Ill. 281; 22 W. Va. 6; 131 N. Y. 211; 128 N. Y. 341; 5 Am. & Eng. Enc. Law, 418; 35 Ark. 497; High, Inj. § 818; 50 Ark. 473; 40 L. R. A. 402; 21 S. W. 1031. Appellee was entitled to his remedy by injunction, notwithstanding the acts complained of constituted a violation of a municipal ordinance. 28 Am. St. 187; 36 La. Ann. 162; 51 Am. St. 7; Wood, Nuis. 645; 76 Cal. 511; 13 Phila. 19; 19 Ill. 395; 29 La. Ann. 651; 29 Am. Rep. 345.

McCulloch, J. W. E. Beatty and W. A. Broad, plaintiff and defendant, respectively, below, are adjoining owners of property in the city of Eureka Springs abutting on a public reservation known as "Basin Spring Circle," a circular area having a radius of 100 feet with the Basin Spring at the center. Spring street intersects the circle on the east side, and Broad's property abuts on the west side of that street where it intersects the circle on the south, and Beatty's property lies west of Broad's. Beatty has on his lot a building known as the "Southern Hotel," erected many years ago and still used as a hotel, and on Broad's lot near the front there is a small frame building which he has occupied as a place of residence since 1881, except from 1887 to 1899 he rented it to other parties. In 1899, a short while before the commencement of this suit, Broad moved the house fifteen feet forward in the direction of the circle and two feet east toward

Spring street, and raised it higher off the ground. Beatty thereupon commenced this suit, claiming that Broad had wrongfully moved the house upon the public reservation embraced within the circle; that he sustained special and irreparable injury to his hotel property by reason thereof; and prayed for a writ of mandatory injunction requiring the defendant to remove the house from the reservation.

The defendant answered, admitting the removal of the building as alleged, but denied that it was on the reservation, or that plaintiff was damaged thereby, and alleged that he and his grantors have been in actual, open, notorious and undisputed adverse possession of the ground on which the building is situated continuously since 1879, claiming to be the owners. The decree below was in favor of the plaintiff for the relief prayed for, and defendant appealed.

The conflict between these parties arises mainly on account of the dispute as to the method by which Basin Spring Circle and the other parks and streets of the city were laid out, whether by surface or by horizontal measurements, the surface being so sharply broken and the elevations so great as to render the difference in measurement very material. The appellee, Beatty, asserts that the surveys were by horizontal measurements, and that, according thereto, the house is within the circle, whilst Broad claims and undertakes to prove that the measurements were upon the surface, and exclude his lot and house from the circle. It is shown conclusively by the proof that, if the surface measurement rule be applied, the house is outside of the circle, but if the horizontal measurements be the guide, the house originally extended seven feet within the circle, and since the removal extends twenty-two feet within it.

The conclusion which we have reached makes it unnecessary for us to decide which of these rules of measurement are shown by the testimony to have been practiced in making the surveys, and we therefore express no opinion thereon, but we do find from the testimony that Broad and those under whom he claims title held the property for more than twenty years before the commencement of this suit, according to the alleged surface measurement, and that his and their claims have been recognized

and acquiesced in all the while by the public generally, and particularly by the city authorities, so far as the boundaries of this lot was concerned.

The proof shows that the Broad lot was owned and occupied in 1879 by Dr. John Smart, from whom Broad deraigns title. Dr. Smart built the house in controversy in June, 1879, upon the spot from which Broad removed it in 1899; and occupied it as an office and residence for a year or two until he sold it. During the same year he built out of logs a wall along the north and east lines of the lot, designating the boundary lines as now claimed by Broad, and thus enclosing the house within this wall; and in 1881, after Broad acquired the property, he tore away the log wall, and replaced it with a permanent stone wall, made of cut stones with polished marble pillars fastened with iron rods, and placed thereon an iron fence with a gate at the front as it remains at present. The house, since its removal, is still within this wall.

It does not appear that the lines marked by the wall and fence have ever been questioned, or that the possession by Broad of the territory therein bounded has ever been disturbed or challenged until the commencement of this suit. On the contrary, it is shown that he has held possession up to that line without question, and that the city officials at all times recognized his right to do so and treated the wall as the true line. In other words, we find that his claim of adverse possession is fully sustained by the evidence. It is shown, however, that in February, 1899, immediately before the removal of the house, Broad procured from the city council a lease for ninety-nine years of the strip of ground between the two conflicting lines of the radius of the circle according to the surface and horizontal measurements. This lease was executed by the mayor pursuant to an ordinance passed by the city council, and recites a consideration of $1 and a conveyance to the city by Broad of the strip of ground twenty-one and a half feet wide abutting on Spring street for the purpose of widening that street.

It is urged by counsel for appellee that the mayor and city council exceeded their powers in granting the lease, and that the same is void, and conferred no additional rights upon appellant Broad. The question also arises whether or not the acceptance of the lease by Broad is such a recognition by him of the

city's ownership of the property as to negative his claim of adverse possession and estop him from asserting his claim thereto. Conceding for this purpose, though not deciding, that the lease is void, we hold that acceptance of it by Broad does not estop him from claiming and proving as a defense to the action his right by adverse possession. The acceptance of a void lease raises a mere presumption of the recognition of the title of the lessor, which may be rebutted by testimony *dehors* the instrument of lease showing a contrary intention. *Shorman* v. *Eakin*, 47 Ark. 351; *Dupas* v. *Warsell*, 1 Dill, 213.

The undisputed testimony of Broad and several members of the city council show that, when he appeared before the council to procure the lease, he claimed a perfect title and rightful possession, but asked for the lease merely for the purpose of removing the cloud cast upon his title by reason of the dispute concerning the method of measurement in the survey. His conduct in the transaction, as shown by the proof, distinctly negatived any intention to recognize any claim of ownership on the part of the city or any one else save himself, and, we think, fully overcame the presumption raised by his acceptance of the lease. It is manifest that he intended to hold adversely up to the disputed line, thus bringing the case within the doctrine laid down by this court in *Wilson* v. *Hunter*, 59 Ark. 626.

Our attention is called by counsel for appellee to the third subdivision of section 3 of the act of March 21, 1885, found in Sandels & Hill's Digest, § 5313.

This court held in *Fort Smith* v. *McKibbin*, 41 Ark. 45, that the statute of limitations ran against a municipal corporation, and that adverse possession of an alley in a city for the statutory period would give title to the occupant and bar the city. Doubtless, the above-named statute was enacted to prevent some of the evils thought to result from the full operation of the statute of limitations against a municipality. Without undertaking to determine the full scope and effect of the statute, we hold that it is not applicable to prevent a plea of limitations in an action of this kind brought by an individual to require the removal of an obstruction from the public grounds of the city after an adverse holding for more than the statutory period, and when no order of removal has been made by the city council or police court.

We think the chancellor erred in rendering a decree for the plaintiff, so the cause is reversed and remanded, with directions to enter a decree dismissing the complaint for want of equity.

Mr. Justice Wood dissents.