NORTHWEST LAND CO., INC. *v.* SUGG.

5-1132                                             299 S. W. 2d 63

Opinion delivered February 25, 1957.

*Cockrill, Limerick & Laser,* for appellant.

*Kay Matthews, Richard L. Pratt* and *Cooper Jacoway,* for appellee.

J. Seaborn Holt, Associate Justice. This litigation involves land outside the corporate limits of the City of Little Rock and described as Lots 1, 2, 3, 4 and 5, Block 10, Hamilton and Brack's Addition to the City of Little Rock, Arkansas. Northwest Land Company, Inc. (appellant) on March 10, 1955, filed suit against J. W. Sugg, Frank and Mary Pinkerton, Ira Loyd, Clara Hamilton and H. J. Burney, her guardian, to remove certain alleged clouds on the title to this property, the alleged clouds consisting of certain tax deeds to appellees. Appellant also asked that a confirmation decree confirming title to said lands in the State of Arkansas be cancelled. In the alternative appellant prayed that it be permitted to redeem on the ground that Clara Hamilton was an incompetent at the time of the tax sale and at all times thereafter. Appellant, Clara Hamilton, answered with a general denial and in a cross complaint against appellant, Northwest Land Company, and appellees, Frank and Mary Pinkerton and Ira Loyd, prayed that title to the lands be quieted in her. She also alleged in her answer irregularities in her commitment

to the State Hospital and the appointment of her guardian. The Pinkertons answered alleging that they had acquired title to Lots 1, 2, 3, and 4 above by valid tax deed from the State of Arkansas and also by adverse possession, and prayed that title to these lands be quieted in them. Ira Loyd, though duly served, filed no pleadings, and has not appealed. January 24, 1956, following a trial, the court entered a decree quieting title to Lot 5, Block 10, in appellant land company, against any and all claims of Clara Hamilton, J. W. Sugg or Ira Loyd and further decreed that title to Lots 1, 2, 3, and 4, Block 10, be quieted in Frank Pinkerton and Mary Pinkerton, free of any claim of interest by Northwest Land Company, Inc., Clara Hamilton or H. J. Burney, her guardian.

Northwest Land Company, Inc., has appealed from that part of the decree quieting title to Lots 1, 2, 3, and 4, Block 10, in the Pinkertons. Clara Hamilton has appealed from that part of the decree quieting title to Lot 5, Block 10, in Northwest Land Company, Inc., and quieting title in Lots 1, 2, 3, and 4, Block 10, in Frank and Mary Pinkerton. Appellant says: "This appeal by appellant, Northwest Land Company, Inc., resolves itself into two questions. First: Appellant's right to attack the tax sale for 1937 taxes and the confirmation thereof, and Second: In the alternative, if the sale for nonpayment of 1937 taxes is upheld, appellant's right to redeem from the tax sale."

For reversal Northwest Land Company contends that the tax sale to the State of Arkansas was absolutely void because of excessive costs, erroneous descriptions and insufficient notice of sale; that it has the right to attack the confirmation decree within one year after Clara Hamilton's disabilities are removed, or, in any event within two years or within three years after Clara Hamilton's disabilities are removed, and finally, in the alternative, that appellant has the right to redeem from the tax sale.

It appears that Clara Hamilton acquired title to the five lots in question, through her mother's will, in 1936.

This property, while owned by Clara Hamilton, was sold to the State at a tax sale in November 1938 for the 1937 taxes. The State of Arkansas sold by tax deed these five lots to appellee, J. W. Sugg, on April 3, 1941, and by mesne conveyances the Pinkertons acquired a deed to Lots 1, 2, 3 and 4 on April 16, 1947, have paid the taxes, occupied and improved the property since they acquired it, and Ira Loyd acquired a deed to Lot 5, based on the tax deed to Lot 5. On November 10, 1942, the State's title to these lots was confirmed by the Pulaski Chancery Court.

Clara Hamilton was committed to the State Hospital October 30, 1939, after having been properly and legally adjudged insane on that date. On December 4, 1939, C. M. Walser, on his petition, was appointed guardian of the person and estate of Clara Hamilton, and on March 2, 1943, H. J. Burney was appointed her guardian in succession. H. J. Burney sold the five lots involved here to Gladys Knighton on May 25, 1953, and this sale was confirmed by the Probate Court, and on appeal to this court was affirmed, *Hamilton* v. *The Northwest Land Co., Inc.*, 223 Ark. 831, 268 S. W. 2d 877. On June 29, 1953, Gladys Knighton deeded these five lots to appellant, Northwest Land Company, Inc., Clara Hamilton was released from the State Hospital, December 30, 1953, and her guardian, Burney, had not been discharged.

The Northwest Land Company's contention that the tax sale was void because the lands were improperly described in the tax sale, and advertised separately resulting in excessive costs, we hold to be untenable. In this connection, the land company says: "Each of the parcels was advertised under separate calls which thereby rendered the costs excessive by the inclusion of an additional 25 cents publication fee," and relies on § 84-1104 Ark. Stats. 1947 (Sec. 2, Act 170 of 1935) which provides: "Such list of delinquent lands shall be published in some newspaper of the county . . . All contiguous city lots in any city block owned by one person shall be listed and published under one item and as

one tract. The legal fees for the publication of delinquent real property tax lists shall be twenty-five cents (25c) per tract for the first insertion, and ten cents (10c) per tract for each subsequent insertion . . ." Clearly we think this section applies only to city lots within a city block and does not apply here for the reason that it's conceded that the five lots here involved are located *outside of the City of Little Rock*. There is yet another reason why this section does not apply here and that is, it also appears that the five lots here involved were not contiguous to Lots 8 through 12, Block 10, Hamilton & Brack's Addition to the City of Little Rock, which were sold at the same tax sale, together with these five lots, but were, in fact, separated from them by an eleven foot alleyway.

We hold that the description above used in the tax sale was sufficient. The property was conveyed as Lots 1 through 5, Block 10, Hamilton & Brack's Addition to the City of Little Rock, when as pointed out, the lots were not within the City of Little Rock. This description, however, was sufficient. It appears there was only one Hamilton & Brack's Addition in Pulaski County and it is difficult to see how there could be any confusion in the location of these lots. In the recent case of *Cook* v. *Langhorne*, 219 Ark. 443, 242 S. W. 2d 838, wherein lots were sold for taxes describing them as being in the City of Texarkana, when, in fact, they were not, we said: "In our opinion the description of these lots, as they were forfeited and also deeded by the State, was definite to and understandable by any person of ordinary knowledge. There is only one Forest Park Addition to Texarkana and it is difficult to see how one could possibly be misled as to where the lots were located. Certainly appellant, who bought from the man who platted the lots and named the addition, gives no indication that he was ever confused or misled by the description . . ."

Appellant's next contention, that the tax sale was void because sufficient notice of the sale was not given, is also without merit. Here it is undisputed that the tax

sale was duly confirmed by appropriate proceedings. This confirmation cured any irregularities in the notice of the tax sale. In *Billingsley* v. *Lipscomb*, 211 Ark. 45, 200 S. W. 2d 510, we said: "When the power to sell land for the non-payment of the taxes due thereon did not exist, the sale is void, and the confirmation thereof may be collaterally attacked. If, however, the power to sell existed, but was defectively exercised, the defects may be and are cured by appropriate confirmation proceedings which are not attacked within the time, and in the manner provided by law."

Appellant next argues that it "may attack the confirmation decree within one year after Clara Hamilton's disabilities are removed," and relies on Sec. 9 of Act 119 of 1935. At the time of the confirmation decree involving the five lots here, on November 10, 1942, the provisions of Act 423 of 1941 (now § 84-1325 Ark. Stats. 1947) which fully covered the subject, were in effect and we hold that this act controlled. It is significant that this act contained no saving clause in favor of insane persons or infants. We must presume that the legislature intended just what the act says and deliberately omitted any saving clause to infants and insane persons. ". . . it is a general rule that where the legislature has not seen fit to except a particular person or class of persons from the operation of such statutes (of limitation), the courts will not assume the right to do so. Except, therefore, as the statute of limitations makes express exceptions in favor of such persons, the statute will be applied against the rights of persons laboring under legal disability. Similarly, as a general rule where an exception to the operation of the statute of limitations is not expressly mentioned in the statute, no such exception will be made on the ground of inability to bring suit, absence or non-residence of a party, or evasion of process. It has been held that the courts in construing a special statute of limitation will not read another statute into it and thus incorporate exceptions not contained therein, or give it any new or unusual interpretation." 34 Am. Jur. § 186 p. 150-151. "The rule that the court will not read exceptions into the stat-

ute of limitations applies in the case of persons *non compos mentis*. Generally if there is no saving clause or exception in favor of incompetents, the statute will run against claims in their favor the same as against claims of others not expressly mentioned in the exceptions of the statute . . ." 34 Am. Jur. § 201, p. 162. Therefore, since the enactment of Act 423 of 1941, insane persons stand in the same position as persons who are sane, and are given the right to redeem within one year *from the date of the confirmation decree.*

As indicated, Clara Hamilton's guardian, Burney, conveyed those five lots to Gladys Knighton on proper order from the Probate Court on May 25, 1953, and by this conveyance he conveyed all the interest Clara Hamilton had in the lots at the time. Since we are holding that Clara Hamilton was sane at the time of the tax sale to the state, and that the state acquired good title to these five lots under the tax sale, and that the Pinkertons by mesne conveyances acquired good title to Lots 1, 2, 3, and 4 (on April 16, 1947) it follows that Clara Hamilton had no interest in these four lots that her guardian could later convey to Gladys Knighton, and, therefore, the Pinkertons' title to Lots 1, 2, 3, and 4 is good as against Clara Hamilton, H. J. Burney, guardian, and appellant land company.

The contention of Clara Hamilton on her cross appeal that she had never been legally declared insane and had been fraudulently confined in the State Hospital is without merit and contrary to the record presented, which shows: "Order of Commitment — State of Arkansas — County of Pulaski In the Probate Court of Said County

"Be it Remembered, that at the October term, 1939, of the Probate Court of Pulaski County, Arkansas, Hon. Frank H. Dodge, Judge, presiding, among others, the following proceedings were had in said court on the 30 day of October 1939, a day of said term, to wit: In the matter of the charge of insanity against Miss Clara Hamilton.

"On this day is presented to the court the affidavit of John C. Curtis a reputable citizen of Pulaski County,

Arkansas, wherein he states that Clara Hamilton, a citizen and resident of said County, is insane, and that she should be confined in an asylum for care and treatment.

"And it appearing to the court from the testimony of C. C. Reed, M. D. and Jno R. May, M. D. two competent and disinterested physicians of said County, that the said Clara Hamilton is insane as alleged, the Court doth so find.

"It is therefore ordered and adjudged by the court that the said Clara Hamilton be committed to the Arkansas State Hospital for Nervous Diseases, and there confined for care and treatment. And it is further ordered that a duly certified copy of this order and of all papers pertaining thereto be delivered to the Superintendent of said hospital as his authority for receiving and confining the said Clara Hamilton.

State of Arkansas County of Pulaski I, L. A. Mashburn, Clerk of the Probate Court within and for the County aforesaid, do hereby certify that the foregoing is a true and complete copy of the original order and judgment of said Court therein set forth, and of all papers pertaining thereto, as the same appear of record and on file in my office.

In Testimony Whereof, I have hereunto set my hand and affixed the seal of said Court this 30 day of October 1939.

"By L. A. Mashburn, Clerk,

"By Alma Allnut, D. C."

As to Lot 5, the Chancellor correctly found and decreed "That the title of Northwest Land Company, Inc., to Lot 5, Block 10, Hamilton & Brack's Addition to Little Rock, is hereby quieted against any and all claims that may be asserted by Clara Hamilton, J. W. Sugg or Ira Loyd." We hold that title to this Lot 5 was acquired by appellant land company, through the guardian's deed to Knighton and any interest that Ira Loyd or J. W. Sugg might have claimed is foreclosed since

they were made parties to this suit, duly summonsed, did not plead or appear, but wholly made default.

On the whole case, finding no error, the decree is affirmed.

Mr. Justice MILLWEE not participating.